UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

STEVEN WILLIAMS,
    Plaintiff,

    v.                                                                      Case No. 3:22-CV-1075 (SVN)

BRENDA VARGAS,
    Defendant.

### INITIAL REVIEW ORDER

Sarala V. Nagala, United States District Judge.

Plaintiff Steven Williams, currently on special parole, has filed the present *pro se* complaint pursuant to 42 U.S.C. § 1983 against Defendant, his parole officer, Brenda Vargas, alleging that she deprived him of property and infringed on his right to freely exercise his religious practices in violation of his rights under the First and Fourteenth Amendments. Plaintiff seeks damages only. For the following reasons, Plaintiff's Fourteenth Amendment claim is dismissed, but his First Amendment claim will proceed against Defendant in her individual capacity.[1]

### I.     STANDARD OF REVIEW

Under 28 U.S.C. § 1915A, the Court must review a civil complaint filed by a prisoner and dismiss any portion that "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). *See Osuch v. St. John*, No. 3:18CV846(JCH), 2018 WL 5778243, at *1, *4 (D. Conn. Nov. 2, 2018) (conducting a § 1915A initial review for a complaint brought by a *pro se*

---

[1] To the extent Plaintiff seeks money damages from Defendant in her official capacity, such claim is barred by the Eleventh Amendment. *Michalski v. Semple*, No. 3:16-CV-2039 (VAB), 2017 WL 4475994, at *5 (D. Conn. Oct. 6, 2017) (citing *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985), and *Quern v. Jordan*, 440 U.S. 332, 342 (1979)).

plaintiff on parole). Although highly detailed allegations are not required, the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This plausibility standard is not a "probability requirement," but imposes a standard higher than "a sheer possibility that a defendant has acted unlawfully." *Id.*

In undertaking this analysis, the Court must "draw all reasonable inferences in [the plaintiff's] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). However, the Court is not "bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions," *id.*, and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678. Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

With respect to *pro se* litigants, it is well-established that "[p]*ro se* submissions are reviewed with special solicitude, and 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Matheson v. Deutsche Bank Nat'l Tr. Co.*, 706 F. App'x 24, 26 (2d Cir. 2017) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) (per curiam)). *See also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro*

*se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" (internal citations omitted)). This liberal approach, however, does not exempt *pro se* litigants from the minimum pleading requirements described above: a *pro se* complaint still must "state a claim to relief that is plausible on its face." *Mancuso v. Hynes*, 379 F. App'x 60, 61 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 678). Therefore, even in a *pro se* case, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and the Court may not "invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (citations and internal quotation marks omitted).

## II. FACTUAL BACKGROUND

The Complaint alleges the following facts, which the Court accepts as true for the purpose of this initial review. *Iqbal*, 556 U.S. at 678; *Dehany v. Chagnon*, No. 3:17-cv-00308 (JAM), 2017 WL 2661624, at *3 (D. Conn. June 20, 2017).[2] While on special parole, Plaintiff had a curfew between 9:00 p.m. to 6:00 a.m., enforced by Defendant, his parole officer. Compl., ECF No. 1, ¶ 5. The Islamic month of Ramadan began on April 1, 2022. *Id.* The same day, Defendant sanctioned Plaintiff with a seven-day curfew reduction for violating curfew. *Id.* His curfew was reduced to between 8:00 p.m. to 6:00 a.m. through April 8, 2022. *Id.* Petitioner complied with the reduced curfew. *Id.*

On April 15, 2022, Plaintiff incurred another curfew violation. *Id.* ¶ 6. Defendant sanctioned Plaintiff with a curfew reduction for thirty days. *Id.* Plaintiff complained that the

---

[2] The Court notes that Plaintiff refers to various exhibits throughout his statement of facts but has not submitted any exhibits with the Complaint. The Court need not require Plaintiff to produce those exhibits at this stage of the case, however, given that the facts alleged in the Complaint are accepted as true for the purpose of this initial review.

curfew reduction conflicted with the remaining twelve days of Ramadan, specifically, April 19, 2022, through April 30, 2022. *Id.* Plaintiff explained that he would not have sufficient time to travel from the Masjid, the place of worship, without violating the reduced curfew. *Id.* As a result, Plaintiff was unable to participate in Iftar, a common practice during Ramadan that involves breaking the fast, praying Maghrib, the sunset prayer, and eating halal food in congregation. *Id.* Through these actions, Defendant refused to permit Plaintiff to participate in the congregate worship at the Masjid. *Id.* ¶ 7.

On April 26, 2022, Defendant "arbitrarily" imposed another seven-day curfew reduction. *Id.* Still under the previously imposed thirty-day curfew reduction, Plaintiff again sought permission to attend the Masjid for congregate Ramadan services on the last five days of fasting, from April 26, 2022, through April 30, 2022. *Id.* Defendant "arbitrarily" denied the request. *Id.*

On May 5, 2022, Defendant came to Plaintiff's Re-Entry Assisted Community Housing ("REACH") apartment to arrest him. *Id.* ¶ 8. Defendant "became angry" because Plaintiff was not ready to leave. *Id.* Defendant did not permit Plaintiff to take his television, digital antenna, green luggage containing four winter coats, and food, indicating that he could not bring that personal property. *Id.* Plaintiff further alleges that Defendant's report falsely stated that it took Plaintiff an hour to get packed and out of the apartment. *Id.* ¶ 9. Plaintiff contends that Defendant deprived him of his property in retaliation for the length of time it took him to get packed. *Id.* On June 5, 2022,[3] Plaintiff sent a letter to Ryan Murphy, Director of REACH, seeking return of his property. *Id.* ¶ 10.

---

[3] The Complaint lists this date as "6/5/12," which the Court construes as a typographical error.

### III.   DISCUSSION

Plaintiff asserts two claims, a Fourteenth Amendment claim for deprivation of property and a First Amendment claim for deprivation of his right to freely exercise his religion. For the reasons set forth below, the Court dismisses the Fourteenth Amendment claim, but the First Amendment claim will proceed to service of process.

#### A.   Fourteenth Amendment Claim

Plaintiff contends that Defendant deprived him of his property when she refused to permit him to pack and bring all of his property with him when she arrested and removed him from his REACH apartment. The Due Process Clause of the Fourteenth Amendment provides that the state cannot "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1; *see also Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property").

The "crucial requirement a plaintiff must establish" in a case claiming deprivation of property in violation of the Fourteenth Amendment "is that the deprivation of the plaintiff's property was *without due process of law*." *Gill v. Stella*, 845 F. Supp. 94, 101 (E.D.N.Y. 1994) (emphasis added) (citing *Parratt v. Taylor*, 451 U.S. 527, 537 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327, 330–31 (1986)); *see also Edwards v. Erfe*, 588 F. App'x 79, 80 (2d Cir. 2015) (summary order) ("A prisoner may challenge the deprivation of property in a § 1983 action only if the State provides no adequate post-deprivation remedy."). "By requiring the government to follow appropriate procedures when its agents decide to 'deprive any person of life, liberty, or property,' the Due Process Clause promotes fairness in such decisions." *Daniels*, 474 U.S. at 331. Thus, the Court "must look to the state law remedies provided, in order to determine

5

whether a means of redress exists to satisfy the requirements of procedural due process." *Gill*, 845 F. Supp. at 101.  "It is well-established that 'an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available.'" *Baltas v. Erfe*, No. 3:19CV1820 (MPS), 2021 WL 3887591, at *6 (D. Conn. Aug. 31, 2021) (quoting *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)); *see also Longmoor v. Nilsen*, 329 F. Supp. 2d 289, 299 (D. Conn. 2004) ("Taken together, *Parratt* and *Hudson* hold that, where the intentional deprivation of a property interest results from the random and unauthorized act of a state employee and not pursuant to some established state procedure, the State cannot predict or foresee such deprivation and therefore is not required under the Fourteenth Amendment to provide a predeprivation hearing if adequate postdeprivation state remedies exist.").

Defendant is a state parole officer.  Connecticut provides a remedy for individuals claiming unauthorized deprivations of property by state officers.  *See, e.g.*, *Baltas*, 2021 WL 3887591, at *6; *Sherman v. Corcella*, No. 3:19-cv-1889 (CSH), 2020 WL 4043178, at *17 (D. Conn. July 16, 2020).  Specifically, the Connecticut Department of Correction Administrative Directive 9.6 provides an administrative procedure regarding a prisoner's lost or destroyed property.  *See* State of Connecticut Department of Correction Administrative Directive 9.6 (Aug. 15, 2013) (available on the Department of Correction's website under Directives and Policies at: https://portal.ct.gov/DOC/AD/AD-Chapter-9); *Edwards*, 588 F. App'x at 80.  If a prisoner fails to obtain a remedy pursuant to these procedures, he may then bring a claim against the State to the Claims Commissioner pursuant to Conn. Gen. Stat. § 4-141 *et seq.*, who may order relief or authorize a private civil action against the State.  *See Sherman*, 2020 WL 4043178, at *17 ("Thus, a prisoner must first utilize the [Department of Correction] administrative remedy and then may

proceed to the Connecticut State Claims Commission if his claim is denied"). Moreover, "Connecticut law provides that state employees may be sued as individuals for intentional torts." *Riddick v. Semple*, 731 F. App'x 11, 14 (2d Cir. 2018); *see also Hudson*, 468 U.S. at 534–35 (holding that a prisoner's due process rights were not violated where adequate common-law remedies exist).[4] The Second Circuit has held that Connecticut's post-deprivation remedies for lost property—under the Administrative Directive, § 4-141 *et seq.*, and common law—satisfy the Fourteenth Amendment's due process requirement. *Riddick*, 731 F. App'x at 13–14 (2d Cir. 2018). *See also Baltas*, 2021 WL 3887591, at *6–7; *Sherman*, 2020 WL 4043178, at *17. Plaintiff has not alleged that any of these procedures are somehow inadequate.

Because Connecticut has adequate post-deprivation remedies, Plaintiff cannot state a cognizable due process claim for deprivation of property against Defendant. The Fourteenth Amendment claim is thus dismissed pursuant to 28 U.S.C. § 1915A(b)(1).

### B. First Amendment Claim

Plaintiff next argues that Defendant violated his First Amendment right to practice his religion by imposing sanctions that prevented him from participating in Ramadan services. The Free Exercise Clause of the First Amendment "requires government respect for, and noninterference with, the religious beliefs and practices of our Nation's people." *Cutter v. Wilkinson*, 544 U.S. 709, 719 (2005). Prisoners retain "some measure" of protection under the Free Exercise Clause, but that protection must be balanced against "the interests of prison officials charged with complex duties arising from administration of the penal system." *Ford v. McGinnis*,

---

[4] Here, Plaintiff's Complaint specifically raises a Fourteenth Amendment claim for deprivation of property without due process, not a state common law tort, against Defendant. Compl. ¶ 11.

352 F.3d 582, 588 (2d Cir. 2003) (citations and internal quotation marks omitted).  *See also O'Lone v. Shabazz*, 482 U.S. 342, 348 (1987) (acknowledging that prisoners "clearly retain protections afforded by the First Amendment," but that "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights"); *Baltas v. Jones*, No. 3:21CV469 (MPS), 2021 WL 6125643, at *11 (D. Conn. Dec. 27, 2021) ("Thus, an inmate's right to freely exercise his or her religion is not without limits and may be subject to restrictions related to legitimate concerns involving safety and security").  Accordingly, a prison official's conduct that substantially burdens a prisoner's exercise of religion will not violate the First Amendment "if reasonably related to some legitimate penological interests." *Ford*, 352 F.3d at 594 (citing *O'Lone*, 482 U.S. at 349); *see also Turner v. Safley*, 482 U.S. 78, 89 (1987) ("when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests").

Specifically, a Free Exercise claim requires a prisoner to show (1) that he sincerely holds a particular religious belief, and (2) that his exercise was substantially burdened by the prison official's conduct.[5] *Ford*, 352 F.3d at 588.  In considering whether a prisoner has demonstrated a sincerely held religious belief, the court does not "evaluate the objective reasonableness of the prisoner's belief," but considers only whether the prisoner "sincerely holds a particular belief and whether the belief is religious in nature." *Id.* at 590.  A belief is substantially burdened where the

---

[5] The Second Circuit has "recognized that a question exists as to whether an inmate must establish that the conduct of prison officials resulted in a 'substantial burden' on his religious beliefs in order to state a First Amendment free exercise claim." *Baltas*, 2021 WL 6125643, at *11 n.10 (D. Conn. Dec. 27, 2021) (collecting Second Circuit cases declining to decide whether the substantial burden requirement remains good law, in light of the U.S. Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 972, 887 (1990)).  Because the issue has not yet been squarely addressed by the Second Circuit, courts in this circuit have continued to apply the substantial burden requirement. *Id.*; *Harris v. Kenny*, No. 3:21-CV-703 (CSH), 2022 WL 4252142, at *9 (D. Conn. Sept. 15, 2022); *Velez v. Paredez*, No. 9:22-CV-0362 (LEK/ML), 2022 WL 2904380, at *8 n.5 (N.D.N.Y. July 22, 2022).

state "puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Forde v. Zickefoose*, 612 F. Supp. 2d 171, 177 (D. Conn. 2009) (quoting *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996)).  The substantial burden element "requires courts to distinguish important from unimportant religious beliefs, a task for which . . . courts are particularly ill-suited." *Ford*, 352 F.3d at 593.  After a prisoner plausibly claims that a prison official substantially burdened the prisoner's exercise of a sincerely held religious belief, the prison official bears a "relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct," while the prisoner bears a burden to demonstrate that those interests were irrational or unreasonable.  *Salahuddin v. Goord*, 467 F.3d 263, 275 (2d Cir. 2006) (quoting *Ford*, 352 F.3d at 591, 595).

Here, Plaintiff has plausibly alleged that his exercise of a sincerely held religious belief was substantially burdened by Defendant's curfew reduction.  Reading the complaint liberally to raise the strongest arguments it suggests, as is required given that Plaintiff is proceeding *pro se*, Plaintiff has alleged that he is Muslim and he observes the practices of Ramadan, a holy month in the Islamic faith.  *See* Compl. ¶ 5.  He alleges that he twice requested permission to be excused from his reduced curfew to attend prayer services and congregational events related to Iftar, and that Defendant's refusal caused him increasing "mental anguish and distress."  *Id.* ¶ 6.  These allegations plausibly state that Plaintiff holds a sincere belief that is religious in nature, and that participating in Iftar is an important aspect of his exercise of that belief.

Similarly, these allegations plausibly state that preventing Plaintiff from observing this important religious holiday imposed a substantial burden on his religious exercise.  For example, he alleges that participating in Iftar was "a common practice during the whole month of Ramadan," supporting his allegations that Iftar was an important aspect of his religious exercise.  *Id.*  Indeed, the U.S. Supreme Court has recognized that the "exercise of religion often involves not only belief

9

and profession but the performance of physical acts such as assembling with others for a worship service or participating the sacramental use of bread and wine." *Cutter*, 544 U.S. at 720 (cleaned up).  Moreover, the Second Circuit has recognized that demonstrating a substantial burden to religious exercise "is not a particularly onerous task." *McEachin v. McGuinnis*, 357 F.3d 197, 202 (2d Cir. 2004).  Finally, Plaintiff need not address the penological reasons for Defendant's conduct, as it will be her initial burden to identify those reasons.

Thus, for the purpose of the Court's initial review, Plaintiff has stated a plausible claim that Defendant unconstitutionally and substantially burdened his right to free exercise of his sincerely held religious beliefs.  *See Baltas*, 2021 WL 6125643, at *12.

## ORDERS

Plaintiff's Fourteenth Amendment claim is **DISMISSD** pursuant to 28 U.S.C. § 1915A(b)(1).  His First Amendment claim will **PROCEED** against Defendant Brenda Vargas in her individual capacity.

Ordinarily, the Court would direct the Clerk of Court to mail a copy of the Complaint, this Initial Review Order, and a waiver of service of process request packet to Defendant at her address.  Thereafter, if Defendant failed to waive service of process, the Court would direct the Clerk to arrange for in-person service of process by the U.S. Marshals Service.  Because Plaintiff's Complaint did not provide Defendant's address, however, the Court cannot direct the Clerk of Court to mail the documents to her, nor can the Clerk arrange for in-person service of process.  **Accordingly, by November 1, 2022, Plaintiff must submit a Notice on the docket advising the Court as to Defendant's address.  Failure to do so may result in dismissal of the case.**

In the meantime, the Clerk shall send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Legal Affairs Unit.

**Plaintiff is further advised that, if he changes his address at any time during the litigation of this case, Local Rule 83.1(c)(2) provides that Plaintiff MUST notify the court. Failure to do so can result in the dismissal of the case.** Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.

SO ORDERED at Hartford, Connecticut, this 11th day of October, 2022.

                                              /s/ Sarala V. Nagala
                                              SARALA V. NAGALA
                                              UNITED STATES DISTRICT JUDGE