UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| Steven Williams,<br><br>　　　　　　Plaintiff,<br><br>v.<br><br>Brenda Vargas,<br><br>　　　　　　Defendant. | Civil No. 3:22-cv-01075 (TOF)<br><br>March 1, 2026 |

**RULING AND ORDER ON PLAINTIFF'S MOTION *IN LIMINE* [ECF No. 154]**

The plaintiff, Steven Williams, has filed a motion *in limine* seeking to preclude three classes of evidence that he expects the defendant, Brenda Vargas, to attempt to introduce at trial. (ECF No. 154.) For the following reasons, his motion will be granted in part and denied in part.

**I.   BACKGROUND**

"This is a civil rights lawsuit in which the plaintiff, a parolee, claims that the defendant, his parole officer, violated his rights under the First Amendment of the United States Constitution." (Jt. Status Rpt., ECF No. 171, at 1.)  "More specifically, the plaintiff claims that the defendant unfairly sanctioned the plaintiff with a reduced curfew and refused to allow him to attend Ramadan services, which was a practice of his sincerely held Muslim faith." (*Id.*)  He sued Officer Vargas under 42 U.S.C. § 1983.  (Compl., ECF No. 1, at 1.)

For her part, Officer Vargas "denies the plaintiff's allegations and asserts that any sanctions imposed on the plaintiff were appropriate under the circumstances." (Jt. Status Rpt., ECF No. 171, at 1.)  She "also maintains that the plaintiff never informed her of any request or need for accommodation to attend religious services." (*Id.*)

1

Trial is scheduled for this week.  In advance of trial, Mr. Williams moved *in limine* to preclude three classes of evidence that Officer Vargas plans to offer.  (Pl.'s Mot. *In Lim.* to Preclude Evid., ECF No. 154) [hereinafter "Motion"].  First, he sought to exclude "evidence of [his] alleged curfew violations outside the period of Ramadan[,]" including proposed Defendant's Exhibits 503, 505, 512, and 513.  (*Id.* at 2-3 & n.1.)  Second, he asked the Court to "exclude evidence of [his] alleged other 'Crimes, Wrongs, or Acts[,]'" including proposed Defendant's Exhibits 503, 504, 506, 507, 512, 513, [515], and 516.  (*Id.* at 3-4 & n.2.)  Under this heading, he sought exclusion of (a) "evidence of his positive alcohol tests" and evidence of his GPS battery failure; and (b) his criminal history—except for the crime which led to his parole, which he conceded "may necessarily be discussed in this case."  (*Id.* at 3-4.)  Third, he asked the Court to exclude "evidence of [his] behavior towards staff at residential facilities[,]" including proposed Defendant's Exhibits 508, 510, and 513.  (*Id.* at 4-5 & n.3.)

Officer Vargas filed an objection (Def.'s Obj. to Pl.'s Mots. *In Lim*, ECF No. 155) [hereinafter "Objection"], and the Court heard oral argument at the final pretrial conference.  (*See* ECF No. 162.)  In her written objection, the officer explained that she "does not intend to introduce evidence of plaintiff's behavior toward staff at residential facilities unless plaintiff himself opens the door" at trial.  (Objection at 9.)  At oral argument, Mr. Williams' counsel agreed that this concession mooted the third of the three issues raised in his motion, at least on the current record.  The other two issues remained unresolved after argument, however.  This ruling resolves them.

## II.   DISCUSSION

### A.   Applicable Legal Standards

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence."  *Jean-Laurent v. Hennessy*, 840 F.

2

Supp. 2d 529, 536 (E.D.N.Y. 2011) (citing *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)). "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *Wright v. Snyder*, No. 3:21-cv-104 (SVN), 2024 WL 811998, at *3 (D. Conn. Feb. 27, 2024) (quoting *United States v. Paredes*, 176 F. Supp. 2d 179, 181 (S.D.N.Y. 2001)). "The trial judge may reserve judgment on a motion *in limine* until trial to ensure the motion is considered in the proper factual context." *Id.* (quoting *Walker v. Schult*, 365 F. Supp. 3d 266, 275 (N.D.N.Y. 2019)). "The moving party bears the burden of establishing the inadmissibility of evidence." *Id.* (citing *United States v. Pugh*, 162 F. Supp. 3d 97, 101 (E.D.N.Y. 2016)).

### B. Curfew Violations Outside of Ramadan

Mr. Williams first asks the Court to "exclude evidence of [his] alleged curfew violations outside the period of Ramadan." (Motion at 2.) He came under Officer Vargas's supervision on February 28, 2022 (ECF No. 168-3, at 2), and the officer placed him under a 9:00 p.m. to 6:00 a.m. curfew that day. (ECF No. 170-1, at 1.) The parties agree that, "[f]or purposes relevant to this trial . . . Ramadan was observed between April 1, 2022 and May 1, 2022." (Jt. Status Rpt., ECF No. 171, at 2.) Mr. Williams allegedly violated his curfew before Ramadan began—that is, between February 28, 2022 and April 1, 2022—and after Ramadan ended as well. (*See* Motion at 2-3.)

Mr. Williams asks the Court to preclude evidence of alleged pre- and post-Ramadan curfew violations, for several reasons. (Motion at 2-3.) First, he contends that the evidence is "irrelevant to any claim or defense in this case[,]" because "[t]he question before the jury is whether the Defendant's actions violated [his] First Amendment right to the free exercise of religion during the period of Ramadan 2022." (*Id.* at 2.) Second, he asserts that "[t]his evidence would also be

3

more prejudicial than probative because it would allow speculative arguments about [his] general adherence to the curfew policy." (*Id.*)  Third, he says that because his "'violation' of curfew during Ramadan is not contested," evidence of violations before and after Ramadan could only be impermissible "propensity" or "character" evidence." (*Id.*)  Fourth and finally, he argues that the evidence would confuse the jury and lead to "multiple mini-trials" on collateral issues. (*Id.* at 2-3.)

Having carefully considered the matter, the Court concludes that Mr. Williams is not entitled to a pre-trial order precluding evidence of pre-Ramadan curfew violations.  To begin with, the Court concludes that evidence of these alleged violations is "relevant" information as that term is defined in Rule 401 of the Federal Rules of Evidence.  On the first day of Ramadan, Officer Vargas moved the start time of Mr. Williams' curfew back from 9:00 p.m. to 8:00 p.m., assertedly as a sanction for one or more of those violations. (*See* Compl., ECF No. 1, ¶ 5.)  Mr. Williams contends that the reduction in hours interfered with his Ramadan observance by preventing him from praying the sunset Maghrib prayer and eating the fast-breaking Iftar meal in a congregate setting at his masjid. (*Id.* ¶ 6.)  Trial will involve consideration of whether Officer Vargas had "legitimate penological interests that justif[ied] the impinging conduct," *Williams v. Vargas*, No. 3:22-cv-1075 (SVN), 2022 WL 6771395, at *4 (D. Conn. Oct. 11, 2022) (quoting *Salahuddin v. Goord*, 467 F.3d 263, 275 (2d Cir. 2006)), and Mr. Williams' conduct before the curfew reduction will potentially be relevant to the jury's assessment of those interests.  *See* Fed. R. Evid. 401 ("Evidence is relevant if . . . it has any tendency to make a fact more or less probable than it would be without the evidence; and . . . the fact is of consequence in determining the action.").  Moreover, the Court disagrees that evidence of pre-Ramadan curfew violations would be more prejudicial than probative, constitute impermissible "propensity" or "character" evidence, or needlessly bog the jury down with collateral inquiries.  Whether Mr. Williams' supervision history justified the

4

curfew reduction will be a central area of inquiry at trial, and his alleged violations are admissible for that purpose.[1]

The post-Ramadan violations stand on a different footing, however.  Officer Vargas has identified no fact, "of consequence in determining the action," that would be shown to be "more or less probable" by evidence of such a violation.  Fed. R. Evid. 401.  At oral argument, her counsel alluded to her "state of mind," but the Court observes no way in which a violation *after* Ramadan could inform a probation officer's state of mind about a sanction that she applied *during* Ramadan.

For these reasons, Mr. Williams' motion will be granted in part and denied in part with respect to curfew violations outside of Ramadan.  It will be granted to the extent that Officer Vargas shall not introduce or attempt to introduce evidence of curfew violations after May 1, 2022, including but not limited to the post-Ramadan portions of proposed Defendant's Exhibits 512 and 513.  The Court's order will be without prejudice to Officer Vargas's right to attempt to introduce such evidence if the record changes at trial in a material way, *e.g.,* if there is testimony that imparts a heretofore-unobserved relevance to a post-Ramadan violation.  The motion will be denied to the extent that it seeks an order precluding evidence of pre-Ramadan violations, including but not limited to proposed Defendant's Exhibits 503 and 505.

---

[1]     Mr. Williams raised another objection at oral argument, but the Court is not persuaded by it.  He asserted that Officer Vargas should not have placed him on GPS monitoring at the beginning of his supervision on February 28, 2022, because his specific crime of conviction did not support such monitoring under Connecticut's special parole rules.  He evidently reasons that, if he had not been on GPS monitoring, his curfew violations would not have been discovered.  He therefore concludes that it would be unfairly prejudicial for the jury to hear about violations that should not have been discovered in the first place.

So far as the docket discloses, Mr. Williams did not raise that claim at any earlier point in the case.  (*See generally* Compl., ECF No. 1) (failing to allege that placement on GPS monitoring was inappropriate).  But even if it is true that Mr. Williams should not have been on GPS, the fact is that he was, and Officer Vargas is apparently expected to testify that his prior curfew violations informed her assessment of the need for the one-hour reduction in curfew hours.  The alleged pre-Ramadan violations are therefore more probative than unfairly prejudicial.  *See* Fed. R. Evid. 403.

### C.    Evidence of Other Crimes, Wrongs, or Acts

#### 1.    *Alcohol use*

Mr. Williams next seeks exclusion of "[e]vidence of [his] alleged violations unrelated to his curfew, such as his alcohol use[.]" (Motion at 3.)  Without explicitly using the term "relevance" or citing Rule 401, he evidently contends that evidence of his alcohol use while on supervision is irrelevant and therefore inadmissible.  (*See id.*) (arguing that the case is only about whether Officer Vargas unconstitutionally burdened his free exercise rights, and contending that "positive alcohol tests . . . do not help the jury resolve this claim").  He adds that "the evidence of his positive alcohol tests would be more prejudicial than probative[,]" and therefore inadmissible under Rule 403, because "[j]urors are likely to have strong opinions about an observant Muslim person drinking alcohol while trying to attend Ramadan services." (*Id.*)

The Court disagrees that evidence of alcohol use would be irrelevant in this case, for two independently sufficient reasons.  First, a Section 1983 claim premised on the Free Exercise Clause of the First Amendment requires proof that the plaintiff "sincerely holds a particular religious belief[.]"  *Williams*, 2022 WL 6771395, at *4 (citing *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003)).  The Second Circuit has held that a religious "adherent's belief would not be 'sincere' if he acts in a manner inconsistent with that belief[.]"  *Int'l Soc'y for Krishna Consciousness v. Barber*, 650 F.2d 430, 441 (2d Cir. 1981).  While it is true that "even the most sincere practitioner may stray from time to time[,]" and that actions inconsistent with the adherent's faith are therefore not *dispositive* of the question of his sincerity, *Gardner-Alfred v. Fed. Reserve Bank of New York*, 143 F.4th 51, 64 (2d Cir. 2025) (citation and quotation marks omitted), here Mr. Williams is contending that alcohol consumption is entirely *irrelevant* under Rule 401.  In the Court's view, that contention cannot be reconciled with *Krishna Consciousness*.  Second, Officer Vargas is

6

apparently expected to testify that the terms of Mr. Williams' special parole did not permit him to use alcohol. Any evidence that he did use alcohol is therefore logically relevant to his degree of non-compliance with supervision and, by extrapolation, to the legitimacy of the penological objectives Officer Vargas claimed to be pursuing when she expanded the hours of his curfew.

The Court also disagrees that evidence of Mr. Williams' alcohol use "would be more prejudicial than probative," as he contends. (Motion at 3.) Importantly, Rule 403 is implicated not by mere prejudice, but rather by *unfair* prejudice, and moreover the danger of that unfair prejudice must "substantially outweigh[]" the evidence's probative value. Fed. R. Evid. 403. The claim that it would be *unfairly* prejudicial for the jury to hear that Mr. Williams consumed alcohol while professing a sincere Islamic religious belief is another contention that the Court regards as irreconcilable with *Krishna Consciousness*. 650 F.2d at 441 (stating that "an adherent's belief would not be 'sincere' if he acts in a manner inconsistent with that belief); *cf. also K.A. v. City of New York*, No. 1:18-cv-3858 (ALC), 2023 WL 6393479, at *7 (S.D.N.Y. Sept. 30, 2023) (considering, in the context of a female Muslim prison inmate's claim that her Free Exercise rights were violated by an unchaperoned medical exam, whether she had acted inconsistently with the tenets of her faith). For these reasons, Mr. Williams' motion for a pre-trial order precluding all evidence of his alcohol use will be denied.

In the section of his Motion about other crimes, wrongs, or acts, Mr. Williams also briefly references a "GPS battery failure," and he claims that evidence of such a failure should be excluded. (Motion at 3-4.) But this claim is too underdeveloped to form a basis for such an order. (*Id.*) That portion of his motion will therefore be denied as well, but the denial will be without prejudice to raising the issue at trial.

7

### 2. *Criminal history*

On October 22, 2013, Mr. Williams pled guilty to and was convicted of burglary in the second degree, and burglary in the third degree, in Stamford Superior Court. (ECF No. 168-2.) He was sentenced to thirty months' imprisonment, followed by seven and a half years of special parole. (*Id.*) He was initially discharged from prison into parole on September 18, 2015. (ECF No. 168, at 2.) On November 17, 2021, Mr. Williams was convicted in Bridgeport Superior Court on a charge of assaulting a public safety officer. (ECF No. 168-2, at 3.) He apparently has some misdemeanor convictions in his criminal history as well. (*See* Objection at 2.)

Mr. Williams concedes that the members of the jury will have to hear about his conviction for burglary in the third degree, because otherwise they could not understand how he came to be on parole in the first place. (Motion at 4) (acknowledging that, "because his Burglary-3 conviction formed [the] basis of the Defendant's imposition of GPS monitoring and a curfew in the first instance, it may necessarily be discussed in this case"). And Officer Vargas does not seek to introduce evidence of his misdemeanor convictions, at least on the current record. (Objection at 2) (stating that "the defendant has no intention of using" those convictions, unless Mr. Williams "'open[s] the door' to impeachment" by, *inter alia*, "attempt[ing] to provide testimony to bolster his character or reputation"). But the parties dispute the admissibility of the convictions for burglary in the second degree and assault on a public safety officer.

Two rules of evidence are relevant to these disputes. First, Rule 404(b) provides that "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). But the rule adds that "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity,

8

absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2). This list of permissible purposes is "neither mutually exclusive nor collectively exhaustive[.]" *Carroll v. Trump*, 124 F.4th 140, 156 (2d Cir. 2024) (quoting 1 McCormick, Evidence § 190.1 (8th ed. 2020)). Second, Rule 609 permits parties to "attack[] a witness's character for truthfulness by evidence of a criminal conviction" under certain circumstances, subject to balancing probative value and prejudicial effect. Under that rule, felony convictions "must be admitted" for purposes of impeachment in a civil case, "subject to Rule 403"—in other words, unless their "probative value is substantially outweighed by the dangers of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 609(a)(1); Fed. R. Evid. 403. If more than ten years have passed since the witness was "release[d] from confinement," however, the conviction is admissible for the purpose of impeachment only if "its probative value, supported by specific facts and circumstances, substantially outweighs its prejudicial effect[,]" and only if the examining party provides reasonable notice of its intent to use the conviction for that purpose. Fed. R. Evid. 609(b).

In this case, the Court is unable to say on the current record that Mr. Williams' convictions for burglary in the second degree and assault on a public safety officer are inadmissible under Rule 404(b). Provided that a proper testimonial foundation is laid at trial, Mr. Williams' full felony history could be admissible evidence of Officer Vargas's state of mind with respect to the steps necessary to supervise him. In *Brodeur v. Champion*, for example, a prison inmate claimed that a guard inflicted excessive force upon him, and he sought a pre-trial order excluding evidence of his prison disciplinary history. No. 3:17-cv-1738 (RMS), 2019 WL 3717570, at *1 (D. Conn. Aug. 7, 2019). That history included a prior fight with another inmate, and the guard proffered that he had known about that fight when he responded to the plaintiff's cell on the date in question. *Id.* at

9

\*4-5. Judge Spector denied the inmate's motion, without prejudice to renewal at trial, because the disciplinary history "could be admissible as to [the guard's] state of mind during the incident underlying this case." *Id.* at \*4. The same could be true here, depending on how Officer Vargas testifies. *See id.* at \*5 ("Although the defendant may be correct that the evidence has some relevance as to the issue of whether [the guard] acted in a wanton manner, it is difficult to determine its probative value before hearing the testimony[.]"). As noted above, the plaintiff is entitled to a pre-trial order *in limine* only when "the evidence is clearly inadmissible on all potential grounds." *Wright*, 2024 WL 811998, at \*3. That is not the case here.

The impeachment analysis under Rule 609 is more complex, and it must be conducted separately for each of the two felony convictions at issue. Beginning with Mr. Williams' conviction for assault on a public safety officer, that conviction is subject to Rule 609(a)(1)(A) because it (a) "was punishable by . . . imprisonment for more than one year," *see* Conn Gen. Stat. § 53a-167c(b) (stating that "[a]ssault of public safety . . . personnel is a class C felony"); (b) is being offered in a civil case; and (c) is not a *crimen falsi* subject to Rule 609(a)(2). When a conviction is subject to Rule 609(a)(1)(A), "there is a presumption that 'the statutory name of each offense, the date of conviction, and the sentence imposed, are . . . to be admitted for impeachment purposes." *Fraser v. Caribe*, No. 3:20-cv-71 (SVN), 2023 WL 2889359, at \*2 (D. Conn. Apr. 11, 2023) (quoting *United States v. Estrada*, 430 F.3d 606, 615 (2d Cir. 2005)). But the rule expressly states that it is "subject to Rule 403," and accordingly the presumption can be overcome when the impeachment value of the conviction is substantially outweighed by a danger of unfair prejudice. "In order to determine whether the prejudice of admitting these past felony convictions substantially outweighs their probative value, courts in the Second Circuit examine: '(1) the impeachment value of the prior crime, (2) the remoteness of the conviction, (3) the similarity

10

between the past crime and the conduct at issue, and (4) the importance of the credibility of the witness.'" *Fraser*, 2023 WL 2889359, at *1 (quoting *Anderson v. Scanlon*, No. 3:14-cv-829 (VAB), 2017 WL 3974994, at *3 (D. Conn. Sept. 8, 2017)).

Applying those four factors to Mr. Williams' assault conviction, the Court concludes that Officer Vargas should be permitted to impeach him with it. To be sure, the first factor weighs in favor of preclusion, because although "all felonies are at least somewhat probative of a witness's propensity to testify truthfully," "crimes of violence, such as assault, have been found to have very limited value in impeaching a witness." *Id.* at *2 (citing *Estrada*, 430 F.3d at 618, and *Anderson*, 2017 WL 3974994, at *3). And the second factor does not strongly favor admission, because the probative value of a conviction begins to diminish where, as here, it "occurred more than four years ago." *Ramos v. Trifone*, No. 3:11-cv-679 (SALM), 2015 WL 6509114, at *4 (D. Conn. Oct. 28, 2015). But the third factor favors allowing Officer Vargas to impeach Mr. Williams on this conviction, because "[t]he less similar the pending case to the prior conviction, the less prejudicial its admission is," *id.* (citation and quotation marks omitted), and Mr. Williams conceded at oral argument that the two cases are not similar. And most importantly, the fourth factor weighs heavily in favor of admission. Mr. Williams and Officer Vargas dispute whether he ever requested a religious accommodation, and accordingly his credibility will be exceptionally important to the case. Because the balance of factors favors doing so, the Court will permit Officer Vargas to impeach Mr. Williams with his assault conviction, provided that the impeachment is limited to eliciting the statutory name of the offense, the date of conviction, and the sentence imposed.

Mr. Williams' 2013 conviction for burglary in the second degree requires a different analysis. When "more than 10 years have passed since the witness's conviction or release from confinement," the admissibility of the conviction is governed by Rule 609(b), not Rule 609(a)(1).

11

The ten-year period begins no later than when the felon leaves prison—not when he completes post-incarceration probation, *see Smith v. Perez*, No. 3:19-cv-1758 (VAB), 2023 WL 4540439, at *5 n.5 (D. Conn. July 14, 2023)—and it ends at the time of trial, not at the time of the events being sued upon. *Jeanty v. Cerminaro*, No. 6:16-cv-966 (BKS) (TWD), 2021 WL 2778572, at *2 (N.D.N.Y. July 2, 2021) (citing cases). In this case, Mr. Williams' prison term for burglary in the second degree ended on September 18, 2015 (ECF No. 168, at 2), and trial will start in March, 2026. The conviction is therefore more than ten years old for purposes of Rule 609.[2]

The Second Circuit has "recognized that Congress intended that convictions over ten years old be admitted 'very rarely and only in exceptional circumstances.'" *Zinman v. Black & Decker (U.S.), Inc.*, 983 F.2d 431, 434 (2d Cir. 1993) (quoting S. Rep. No. 1277, 93d Cong., 2d Sess., *reprinted in* 1974 U.S.C.C.A.N. (93 Stat.) 7051, 7062)). Reflecting this concern, the ordinary balance between probative value and prejudicial effect is reversed when the conviction is more than ten years old. Whereas more recent convictions are subject to the familiar Rule 403 standard—under which relevant evidence may be excluded if its probative value is substantially outweighed by unfair prejudice, *see* Fed. R. Evid. 609(a)(1)(A); Fed. R. Evid. 403—when the

---

[2] Mr. Williams violated his special parole on seven occasions, and he was remanded back into custody each time. (ECF No. 168, at 2 & n.2.) Officer Vargas therefore contends that the ten-year look-back period should begin to run from the date of Mr. Williams' release from his last parole commitment in 2023, not from his 2015 release from his base term of imprisonment. (*Id.*) She cites a case involving a federal felon who was returned to custody after violating the terms of his supervised release. (*Id.*) (citing *United States v. Hampton*, No. CR-15-302, 2017 U.S. Dist. LEXIS 66771, at *7-8 (E.D. Pa. May 2, 2017)). Because a federal supervised release revocation sentence is deemed to have been "imposed on the underlying conviction itself," the court in that case held that the look-back period began when the felon released from his revocation sentence, not from his initial sentence. *Hampton*, 2017 U.S. Dist. LEXIS 66771, at *7-8 (citing cases). But Officer Vargas has cited no authority applying the same analysis to a Connecticut state parole revocation, and even in federal court, the authorities are divided on the question. *See, e.g., United States v. Wise*, 581 F. Supp. 3d 656, 658 (D.N.J. 2022); *Smith*, 2023 WL 4540439, at *5 n.5. In part because it does not need to, given the outcome of its Rule 609(b) analysis, the Court declines to adopt Officer Vargas's approach.

conviction is more than ten years old, it is excluded unless the probative value substantially outweighs the prejudicial effect. Fed. R. Evid. 609(b)(1). In making this determination, a District Court must "make an on-the-record finding based on specific facts and circumstances[.]" *United States v. Mahler*, 579 F.2d 730, 734 (2d Cir. 1978); *see also Jones v. New York City Health & Hosps. Corp.*, 102 F. App'x 223, 226 (2d Cir. 2004) (summary order) (same). Factors relevant to the analysis include "[1] the impeachment value of the prior crimes, [2] the date of the conviction and the witness's subsequent history, [3] the degree of similarity between the past crimes and this [case], [4] the centrality of the witness's credibility in this case, and [5] the importance of the witness's testimony." *Jeanty*, 2021 WL 2778572, at *2 (quoting *United States v. Brown*, 606 F. Supp. 2d 306, 311-12 (E.D.N.Y. 2009)) (brackets omitted). "Although all of these factors are relevant, 'prime among them is the first factor, *i.e.*, whether the crime, by its nature, is probative of veracity.'" *Id.* (quoting *Brown*, 606 F. Supp. 2d at 311-12, which in turn quoted *United States v. Ortiz*, 553 F.2d 782, 784 (2d Cir. 1977)) (alterations omitted).

    Although impeachment on a ten-and-a-half year-old conviction should be permitted only "rarely" and in "exceptional circumstances," the Court concludes that it should be allowed in this case. Taking the above five factors in order, the impeachment value of Mr. Williams' burglary is higher than the impeachment value of his assault conviction, because burglary involves stealth. *Estrada*, 430 F.3d at 618-19. "[C]rimes of stealth . . . while not quite crimes of 'dishonesty or false statement,' do reflect lack of credibility and should be admitted unless significantly prejudicial." *Id.* (quoting *United States v. Lipscomb*, 702 F.2d 1049, 1057 (D.C. Cir. 1983) (en banc)). The second factor does not compel preclusion where, as here, the conviction is only a few months beyond the ten-year window; in such a case, the "conviction is not so ancient as to lose any probative force or to 'suggest that Plaintiff had abandoned his earlier ways.'" *Casmento v. Volmar*

*Constr., Inc.*, No. 20-cv-944 (LJL), 2022 WL 1094529, at *4 (S.D.N.Y. Apr. 12, 2022) (quoting *United States v. Gilbert*, 668 F.2d 94, 97 (2d Cir. 1981)). The third factor likewise favors admission here, because again, Mr. Williams conceded at oral argument that this case and his prior criminal cases are dissimilar. The fourth and fifth factors strongly support admission, because Mr. Williams' credibility and testimony are both crucial to the case for the reasons stated above. And finally, the prejudicial effect of allowing impeachment on a conviction for burglary in the second degree will be low considering Mr. Williams' concession that the jury must hear that he was convicted of burglary in the third degree on the very same day. The Court again acknowledges that impeachment on a ten-and-a-half year-old conviction should be allowed only "rarely" and in "exceptional" cases, but this is such a case.

### III. CONCLUSION

For the foregoing reasons, the Plaintiff's Motion *In Limine* to Preclude Evidence (ECF No. 154) is granted in part and denied in part. It is granted to the extent that Officer Vargas shall not introduce or attempt to introduce evidence of curfew violations after May 1, 2022, including but not limited to the post-Ramadan portions of proposed Defendant's Exhibits 512 and 513, on the current record, without prejudice to her right to attempt to introduce such evidence if the record changes at trial in a material way, *e.g.,* if there is testimony that imparts a heretofore-unobserved relevance to a post-Ramadan violation. Except to the extent expressly granted herein, the motion is denied.

So ordered this 1st day of March, 2026, at Hartford, Connecticut.

*/s/ Thomas O. Farrish*
Hon. Thomas O. Farrish
United States Magistrate Judge